United States District Court
Southern District of Texas
FILED

JUN 1 0 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *Plaintiff* | § § § § | |
| v. | § § | CIVIL ACTION NO. **B-03-110** |
| NORBERTO REYES, d/b/a REYES CONSTRUCTION, INC., and REYES CONSTRUCTION COMPANY, *Defendant* | § § § § § | |

## COMPLAINT

1.  The United States of America, plaintiff, asserts this complaint on behalf of the International Boundary and Water Commission, United States Section. *See* 22 U.S.C. §§ 277 *et seq.* Jurisdiction is founded on 28 U.S.C. § 1345.

2.  Norberto Reyes, defendant, may be served with process at 5926 Maverick, Brownsville, Texas 78521.

3.  Defendant does business as Reyes Construction, Inc., Reyes Construction Company, Inc., or Reyes Construction Company. Reyes Construction, Inc. was chartered as a Texas corporation on February 9, 1996, but its charter was forfeited for non-payment of franchise taxes on February 18, 1998.

4.  By deed dated December 26, 1938, recorded in Volume 287, at Page 133 of the Deed Records of Cameron County, Texas (a copy of which is attached as *Exhibit A*), Cameron County granted the United States "the perpetual right to enter and re-enter in and upon the lands and premises hereinafter described for the purpose of constructing, repairing, operating, and maintaining:

    (1) Suitable revetment and jetty works along and adjacent to the banks of the Rio Grande, and the right to construct and maintain such anchors, cables, and other structures in connection with the construction, operation, and maintenance of such revetment and

1

    jetty works, as Grantee, and its assigns, may from time to time deem necessary for the purpose of preventing erosion along and adjacent to the banks of the Rio Grande; and

 (2) Suitable levees, together with the right to use so much of said land for borrow in connection therewith, and the right to construct and maintain thereon suitable roadways, fences, gates, cattle guards, telephone lines, ramps, and road crossings or other structures in connection with the operation and maintenance of said levees, as Grantee, and its assigns may from time to time deem necessary.

on the respective tracts" described therein. Plaintiff subsequently erected a levee and revetment works on the property as authorized by said deed and the provisions of 22 U.S.C. §§ 277 *et seq*.

 5. Defendant and his employees or contractors have interfered with plaintiff's dominant right to use the servient estate for the purpose of the 1938 by excavating a large sand pit between the levee and the Rio Grande River. This excavation encroaches upon the area covered by the easement and will weaken or destroy the lateral and subadjacent support for the levee in the event of a flood.

 6. Employees of the International Boundary and Water Commission demanded that the defendant remedy the situation, but he has failed to do so. By letter dated May 2, 2003, a copy of which is attached as *Exhibit B*, the United States Attorney's Office also requested that defendant remedy the situation.

 7. The flood season began June 1, 2003. It is imperative that the situation be promptly remedied.

Wherefore, plaintiff prays that defendant be ordered to immediately (1) replace the soil material that he excavated from the area within or near the 1938 easement with similar soil material that is free of brush, trees, trash, bricks, concrete, etc., (2) compact the replacement soil material in a workmanlike manner, and (3) restore the area to the condition

that it was in before the excavation. If the plaintiff fails and refuses to remedy the situation upon receipt of this complaint, the plaintiff should be awarded a judgment for (1) all costs incurred in restoring the area, including the value of the time expended by its employees, and (2) an injunction barring future interference with the plaintiff's levee and revetment works.

                Respectfully submitted,

                MICHAEL T. SHELBY
                United States Attorney

By: *Charles Wendlandt*
                CHARLES WENDLANDT
                Assistant United States Attorney
                Admissions I.D. Number: 12172
                State Bar I.D. Number: 21171500
                800 N. Shoreline Blvd., Suite 500
                Corpus Christi, Texas 78401
                Tel.: (361) 888-3111
                FAX (361) 888-3200

Vol. 287
Pgs. 133-136
12/27/38

Form R/W-105
Page No. 1
8-26-36

1&7-C

EASEMENT DEED FROM COUNTY TO UNITED STATES OF AMERICA

STATE OF TEXAS

COUNTY OF CAMERON

    THAT __Cameron__ County, Texas, acting herein by and through its County Judge, in pursuance of and hereunto duly authorized by resolution of the Commissioners' Court of said County and the Acts of 1934, 43rd Legislature of Texas, Fourth Called Session, page 71, Chapter 29, for and in consideration of the sum of One ($1.00) Dollar to it in hand paid, receipt of which is hereby acknowledged and confessed, and the works projected by the United States of America on the Lower Rio Grande, as authorized by the Act of the Seventy-fourth Congress, Public No. 286, approved August 19, 1935, (49 Stat. 660) and Acts amendatory thereof and supplementary thereto, HAS GRANTED, SOLD, AND CONVEYED, and by these presents DOES HEREBY GRANT, SELL, AND CONVEY unto the United States of America, and its assigns, the perpetual right and easement to enter and re-enter in and upon the lands and premises hereinafter described for the purpose of constructing, operating, and maintaining:

    (1) Suitable revetment and jetty works along and adjacent to the banks of the Rio Grande, and the right to construct and maintain such anchors, cables, and other structures in connection with the construction, operation, and maintenance of such revetment and jetty works, as Grantee, and its assigns, may from time to time deem necessary for the purpose of preventing erosion along and adjacent to the banks of the Rio Grande; and

    (2) Suitable levees, together with the right to use so much of said land for borrow in connection therewith, and the right to construct and maintain thereon suitable roadways, fences, gates, cattle guards, telephone lines, ramps, and road crossings or other structures in connection with the operation and maintenance of said levees, as Grantee, and its assigns may from time to time deem necessary,

on the respective tracts hereinafter described as follows, to-wit:


EXHIBIT A

Being five tracts of land containing 12.29 acres, 8.83 acres, 3.44 acres, 47.18 acres and 1.91 acres, out of and a part of a 263 acre tract, being Share No. 10 of the Espiritu Santo Grant, Cameron County, Texas, said 263 acre tract being all of an 87 2/3 acre tract allotted to Mrs. Amelia Champion and a 175 1/3 acre tract allotted to Mrs. Agueda C. Werbiski in partition deed recorded in Volume H, pages 1-8 of the District Court Minutes of Cameron County, Texas. (Said 175 1/3 acre tract being subsequently devised to Emilia Werbiski Champion in the last will and testament of Agueda Caballero de Werbiski, deceased, recorded in Volume K, pages 357-360 of the Deed Records of Cameron County, Texas.) Said 12.29 acre, 8.83 acre, 3.44 acre, 47.18 acre and 1.91 acre tracts each being more particularly described as follows:

**First Tract, Revetment:** Beginning at a point on the west line of said 263 acre tract, said point being South 14° 29' 34" East, 4307.3 feet and South 44° 18' West, 661.9 feet from IBC RP No. 41; thence South 17° 58' 30" East, 770.0 feet; thence South 5° 28' East, 706.0 feet; thence South 77° 38' West, 424.7 feet to a point on the north bank of the Rio Grande; thence northwesterly along the meanders of the north bank of the Rio Grande, North 7° 13' East, 206.5 feet, North 20° 54' 30" West, 114.5 feet, North 23° 52' East, 56.4 feet, North 8° 35' West, 173.7 feet, North 10° 24' West, 219.6 feet and North 17° 58' 30" West, 476.6 feet to a point on the west line of said 263 acre tract; thence along said west line, North 44° 18' East, 450.5 feet to the point of beginning, containing 12.29 acres, more or less.

**Second Tract, Revetment:** Beginning at a point on the north bank of the Rio Grande, said point being South 14° 29' 34" East, 4307.3 feet, South 44° 18' West, 305.5 feet and South 56° 22' East, 1467.8 feet from IBC RP No. 41; thence southwesterly along the meanders of the north bank of the Rio Grande, South 45° 47' West, 323.2 feet and South 11° 47' 30" West, 458.3 feet; thence South 76° 44' 30" West, 520.0 feet; thence North 21° 41' East, 1145.8 feet; thence South 56° 22' East, 490.0 feet to the point of beginning, containing 8.83 acres, more or less.

**Third Tract, Revetment:** Beginning at a point on the east line of said 263 acre tract, said point being South 60° 12' West, 2116.2 feet from the intersection of said east line extended with the center line of the Military Road (paved); thence along said east

-1-

Correct as to engineering data
3/28/38  *[signature]*

167 0 (Revised)

line, South 60° 12' West, 254.9 feet to a point on the north
bank of the Rio Grande; thence northwesterly along the meanders
of the north bank of the Rio Grande, North 19° 28' West, 115.1
feet, North 32° 49' West, 351.6 feet and North 36° 14' West,
258.7 feet to a point which bears South 27° 29' 30" East, 5374.8
feet from IBC RP No. 41; thence South 80° 49' East, 412.1 feet;
thence South 30° 31' East, 453.3 feet to the point of beginning,
containing 3.44 acres, more or less.

Fourth Tract, Levee and Revetment:   Beginning at a point on
the west line of said 263 acre tract, said point being South
14° 29' 34" East, 4307.3 feet from IBC RP No. 41; thence along
said west line, North 44° 18' East, 101.8 feet to a point which
bears South 44° 18' West, 2619.4 feet from the intersection of
said west line extended with the center line of the Military
Road (paved); thence South 56° 26' East, 205.9 feet; thence
South 78° 46' East, 2393.8 feet; thence South 30° 31' East,
700.0 feet to a point on the east line of said 263 acre tract;
thence along said east line, South 60° 12' West, 778.1 feet to
the northeast corner of the 3.44 acre tract above described;
thence along the north line of said 3.44 acre tract, North 30°
31' West, 453.3 feet and North 80° 49' West, 412.1 feet to a
point on the north bank of the Rio Grande; thence westerly along
the meanders of the north bank of the Rio Grande, North 77° 30'
West, 379.1 feet and South 74° 05' West, 265.1 feet to the north-
east corner of the 8.83 acre tract hereinabove described; thence
North 56° 22' West, 1467.8 feet to a point on the west line of
said 263 acre tract; thence along said west line, North 44° 18'
East, 305.5 feet to the point of beginning, containing 47.18
acres, more or less.

Fifth Tract, Maintenance Road:   Beginning at the point of inter-
section of the east line of said 263 acre tract with the south
right of way line of the Military Road (paved), said point being
South 60° 12' West, 51.4 feet from the center line of said Military
Road (paved); thence along the east line of said 263 acre tract,
South 60° 12' West, 1286.7 feet to the northeast corner of the
47.18 acre tract above described; thence along the north line of
said 47.18 acre tract, North 30° 31' West, 65.0 feet; thence
North 60° 12' East, 1272.3 feet to a point on the south right of
way line of the Military Road (paved); thence along said south
right of way line, South 42° 59' 30" East, 66.8 feet to the point
of beginning, containing 1.91 acres, more or less.

Form R/W-105
Page No. 2
8-26-36

TO HAVE AND TO HOLD said rights of way and easement above described unto the United States of America, and its assigns, for the purposes aforesaid, forever.

And Grantor further covenants that it has the full right and power to convey the estate herein granted; that the same is free from all liens and encumbrances; and that Grantor further warrants quiet and peaceable possession of the estate herein granted, and will defend the title thereto against any and all claimants.

IN TESTIMONY WHEREOF, __Cameron__ County, Texas, has caused its name to be hereunto subscribed by its County Judge, as aforesaid, and its seal hereto affixed this the 26" day of __December__, 193 8.

Seal

                                        __Cameron__ County, Texas

ATTEST:                           By: __Oscar C. Dancy__
                                                  County Judge

__H D Seago__
County Clerk by I. Zarate Dy

THE STATE OF TEXAS |
COUNTY OF __CAMERON__ |

Before me, the undersigned authority, A Notary Public in and for __Cameron__ County, Texas, on this day personally appeared __Oscar C. Dancy__, County Judge of __Cameron__ County, Texas, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same as the free act and deed of said county and for the purposes and consideration therein expressed.

Given under my hand and seal of office, this 26" day of __December__ A. D. 193 8.

LS

                                          L.H.Thompson



**U.S. Department of Justice**

*United States Attorney*
*Southern District of Texas*

---

*One Shoreline Plaza*  
*800 North Shoreline Blvd., Suite 500*  
*Corpus Christi, TX 78401*

*Phone (361) 888-3111*  
*Fax (361) 888-3200*

May 2, 2003

Victor Quintanilla, Esq.  
Law Offices of Ernesto Gamez, Jr.   *Via Regular Mail & Fax # 956-541-7694*  
777 E. Harrison  
Brownsville, TX 78520-7118

Re: Restoration of Revetment and Levee Easement

Dear Mr. Quintanilla:

    This letter constitutes the government's formal request that your clients, Norberto Reyes and Reyes Construction Company, Inc., immediately (1) replace all of the soil material that they excavated from the area within the 1938 easement with similar soil material that is free of brush, trees, trash, bricks, concrete, etc., (2) compact the replacement soil material in a workmanlike manner, and (3) restore the area to the condition that it was in before the excavation. It is imperative that this work be completed before the beginning of the flood season on June 1, 2003. Your clients should coordinate the restoration work with the IBWC to avoid any confusion about the details of what the IBWC requires.

    The common source of title is Cameron County. In 1938, the county judge signed the "Easement Deed From County to United States of America" that was recorded in Volume 287, at Pages 133-136, of the Deed Records of Cameron County, Texas. That instrument granted the United States "the perpetual right to enter and re-enter in and upon the lands and premises hereinafter described for the purpose of constructing, repairing, operating, and maintaining:

    (1)    Suitable revetment and jetty works along and adjacent to the banks of the Rio Grande, and the right to construct and maintain such anchors, cables, and other structures in connection with the construction, operation, and maintenance of such revetment and jetty works, as Grantee, and its assigns, may from time to time deem necessary for the purpose of preventing erosion along and adjacent to the banks of the Rio Grande; and

1

**EXHIBIT B**

 (2) Suitable levees, together with the right to use so much of said land for borrow in connection therewith, and the right to construct and maintain thereon suitable roadways, fences, gates, cattle guards, telephone lines, ramps, and road crossings or other structures in connection with the operation and maintenance of said levees, as Grantee, and its assigns may from time to time deem necessary.

on the respective tracts" described therein. Your clients acquired the land after the recording of this easement and they are clearly chargeable with constructive, actual, and inquiry notice of its existence and terms. *See* Tex. Prop. Code § 13.002; *Lake Meredith Dev. Co. v. City of Fritch*, 564 S.W.2d 427, 430-431 (Tex. Civ. App. 1978); *Farmers Mutual Royalty Syndicate, v. Isaacks*, 138 S.W.2d 228 (Tex. Civ. App. 1940); *Markley v. Christen*, 226 S.W. 150, 152-153 (Tex. Civ. App. 1920).

 The easement is a dominant estate and your clients' estate is servient estate. It is well-established that "the owner of the servient estate simply may not interfere with the right of the owner of the dominant estate to use the servient estate for the purpose of the easement." *Vrazel v. Skrabanek*, 725 S.W.2d 709, 711 (Tex. 1987). And, the "grantee of an easement is entitled to such rights as are incident, essential or necessary to the enjoyment of such easement." *San Jacinto Sand Co. v. Southwestern Bell Tel. Co.*, 426 S.W.2d 338, 344-345 (Tex. Civ. App. 1968). The Missouri Supreme Court applied these rules to a levee easement and held:

> Although defendants contend plaintiffs showed no more than a mere possibility that the construction of their private levee might damage plaintiffs' levees, we think plaintiffs' evidence was substantial evidence to show that damage would result and maintenance costs increase and so hold . . . . If defendants had the right to do what they did, other landowners in the area between the Missouri and Arkansas levees could build similar levees; and plaintiffs' evidence is certainly sufficient to show that this would make it impossible for the St. Francis flood control plan to be effective.

*Drainage District No. 48 v. Small*, 318 S.W.2d 497, 504 (Mo. 1958).

 Your clients clearly have no right to interfere with the United States' use of its easement directly by altering revetments or the levee on the subject property. Similarly, the law is clear that they have no right to indirectly interfere with its use of the easement by digging a sand pit that will tend to weaken the lateral and subadjacent support for the levee in the event of a flood. *See Corley v. Exxon Pipeline Co.*, 821 S.W.2d 435 (Tex. Civ. App.

2

1991) (affirming award of damages because the side of landowner's sandpit collapsed, exposing a section of Exxon's pipeline). In *San Jacinto Sand Co.* the court explained:

> [A]ppellant contends that appellee, while it is entitled to such rights as may be necessary and essential to reasonable enjoyment of the easements, is nevertheless not entitled to lateral and subjacent support for the easements in question, and that appellant may with impunity excavate sand and gravel from its 17.584 acre tract as it sees fit. Appellant stipulated that it would not, however, extract sand from beneath the easements or within the 30-foot area where the lines are located. But the evidence clearly shows that such restriction agreed to will not solve the problem, and that within a short time, if appellant pursues its plan of excavations, all lateral and subjacent support of the lines, manhole and other equipment will be lost.
>
> [T]he existence of the right to lateral support is an absolute right and is not subordinate to any right of the Adjoining proprietor. Appellant, however, contends that rights of an Adjoining proprietor differ from the rights of an easement owner as against the landowner, or the rights of the owner of the dominant estate as against those of the owner of the servient estate. We hold that the duties and obligations as between the owners of the dominant estate and the servient estate, if different, are greater and more clearly defined than the rights as between adjoining landowners, by reason of the contractual relationship of the parties under the authority and the rules of law cited above. In contrast, in the present case, there is a special relationship between appellant and appellee and the interests of land involved. The prior owners of the 17.584 acre tract encumbered, for valuable consideration, the tract of land for the benefit of appellee. The owners of the servient estate sold and guaranteed the right to use the easement for the purposes stated. Appellant is in privity with its predecessors in title, and took with actual and constructive notice of Southwestern Bell's easements. Accordingly, there is even more reason to conclude that an easement is entitled to lateral support. . . .
>
> The problems in this case are difficult, for to grant adequate relief to appellee the appellant must suffer loss and damage, and its right to excavate valuable sand and gravel from its land must be reduced. But to our minds the equities and legal rights of the parties are clear. We hold that the owner of the dominant estate, the easement owner, is entitled to lateral and subjacent support for its easements, its lines and its property lawfully thereon, and that the trial court correctly applied the doctrine of lateral and subjacent support.

3

*San Jacinto Sand Co. v. Southwestern Bell Tel. Co.*, 426 S.W.2d 338, 344-345 (Tex. Civ. App. 1968, writ ref. n.r.e.), *cert. denied*, 393 U.S. 1027 (1969).

As I stated when we discussed this matter on Wednesday, I do not believe that the evidence will support a claim of estoppel against the government if we have to take this to district court. *See Matter of Taylor*, 132 F.3d 256, 263 (5th Cir. 1998), *Linkous v. United States*, 142 F.3d 27 (5th Cir. 1998). "Equitable estoppel is a doctrine that is rarely valid against the government." *United States v. Bloom*, 112 F.3d 200, 205 (5th Cir. 1997).

Please advise your client to immediately contact the IBWC and commence restoration of the affected area. Otherwise, it will be necessary to file a lawsuit to provide the impetus for a prompt resolution of the matter.

I am sorry that we cannot afford your client more time to weigh his options. However, with the flood season approaching, we must move quickly to insure the integrity of the levee and floodway system.

                                             Yours truly,

                                             MICHAEL T. SHELBY
                                             United States Attorney

By: *Charles Wendlandt*
       CHARLES WENDLANDT
       Assistant United States Attorney

cc:  Mario M. Lewis       *Via Fax # 915-832-4196*
     Christopher Anzaldua  *Via Fax # 956-565-1575*
     Daniel Hu               *Via Fax*

4